IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03233-CBS

ROGER HOPPE, II, a resident of Michigan, and
CONUNDRUM COMMUNICATIONS INVESTMENTS, INC., a Michigan corporation,
    Plaintiffs,
v.

PERCHERON ASSOCIATES, LLC, a Delaware limited liability company, and
RONDA S. CANTER, a resident of Massachusetts,
    Defendants.

**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS**

Magistrate Judge Craig B. Shaffer

This MATTER comes before the court on Defendants' Motion to Dismiss Amended Complaint (doc. #14), filed February 7, 2012. The Plaintiffs, Mr. Hoppe and Conundrum Communications Investments, Inc. ("CCI"), filed their Response (doc. #20) on February 28, 2012. The Defendants, Percheron Associates, LLC and Ms. Canter, filed their Reply (doc. #25) on March 13, 2012. On February 29, 2012, the above-captioned case was referred to Magistrate Judge Craig B. Shaffer to handle all dispositive matters including trial and entry of a final judgment in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C. COLO. L. Civ. R. 72.2 (doc. #23). The court has reviewed the Motion, the Response, the Reply, the pleadings, the entire case file, and the applicable law. For the reasons stated below, the court denies the Motion.

**I. PROCEDURAL BACKGROUND**

Plaintiff Roger Hoppe claims (1) breach of a purchase agreement and (2) breach of a consulting agreement. Plaintiff CCI claims (1) breach of a lease for a studio and transmitter site and (2) unjust enrichment. Am. Compl. (doc. #11), at 1. All of the claims relate to the sale of radio station KIIQ in Limon, CO. *See id.* Plaintiff Hoppe alleges he agreed to sell Station KIIQ to Defendant Percheron and

1

that the parties entered into three agreements to effect this transaction: a Consulting Agreement, a Purchase Agreement, and a five-year Studio and Transmitter Lease. *Id.* at 3-4.

Under the Consulting Agreement, dated November 29, 2008, Hoppe agreed to provide consulting services and, in return, Percheron would make diligent and commercially reasonable efforts to pursue an upgrade of Station KIIQ's facilities or a substitute facility to sell to a third-party. *Id.* at 3. Percheron would then pay Hoppe 20 percent of its net proceeds from the sale of Station KIIQ or substitute facility. *Id.*  The Consulting Agreement commenced on January 1, 2008 and was to terminate on December 31, 2010 or upon completion of the station upgrade. *Id.* at 3-4.  Hoppe alleges Percheron violated the Consulting Agreement, which in turn prevented Hoppe from collecting 20 percent of the net proceeds from the contemplated sale. *Id.* at 4.  Hoppe further alleges Percheron downgraded the facilities of Station KIIQ, which Hoppe argues is a breach of the Consulting Agreement. *Id.* at 4-5.

The Purchase Agreement was entered into by Percheron and Limon Broadcasting on November 30, 2008. *Id.* at 4.  Limon Broadcasting is a limited liability company that Plaintiff Hoppe envisioned but never formed. *Id.* Although the legally non-existent company was listed as the owner of Station KIIQ, Plaintiff Hoppe allegedly operated Station KIIQ as a sole proprietorship. *Id.*  Pursuant to the Purchase Agreement, Percheron paid Hoppe $100,000. *Id.*  Through a promissory note, a further payment of $100,000 was conditioned upon Percheron's completion of an upgrade of Station KIIQ or a substitute facility. *Id.*  Hoppe alleges Percheron breached the Purchase Agreement by failing to complete an upgrade, thereby depriving Hoppe of the $100,000 due on the note. *Id.*

Plaintiff CCI, whose sole owner is Plaintiff Hoppe, and Percheron entered into a five-year Studio and Transmitter Lease, commencing January 1, 2009 and ending March 24, 2014, for the studio and transmitter building used by Station KIIQ. *Id.*  Percheron allegedly agreed to pay CCI monthly rent of $650, subject to a four percent annual increase. *Id.*  CCI alleges Percheron breached the Lease by reducing the monthly rent to $400 per month from the commencement of the Lease through March 31,

2010, by reducing the length of the Lease, and by failing and refusing to pay any monthly rent after March 31, 2010. *Id.* at 5. Plaintiff CCI also claims Percheron has been unjustly enriched by failing to pay for the use of the transmitter site and studio. *Id.*

In moving for dismissal, Defendants contend Plaintiffs' first claim for relief (for breach of the Purchase Agreement), third claim for relief (for breach of the Lease Agreement), and fourth claim for relief (for unjust enrichment) fail to state claims upon which relief can be granted and should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Motion to Dismiss at 2. Defendants contend that since Plaintiff Hoppe was not a party to the Purchase Agreement, he has failed to bring that claim in the name of the real party in interest as required by Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest"). Motion to Dismiss at 2. Defendants also argue that because Plaintiff CCI was dissolved on July 15, 2004, it may not prosecute the third and fourth claims for relief. *Id.*

Defendants have moved to dismiss Plaintiff Hoppe's second claim for relief pursuant to Fed. R. Civ. P. 12(b)(1), arguing the dispute is not ripe for adjudication because whether Percheron intends to perform is still uncertain. *Id.* Defendants argue the court therefore lacks subject matter jurisdiction to consider Plaintiff Hoppe's claim for breach of the Consulting Agreement. *Id.*

## II. STANDARD OF REVIEW

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction. The determination of subject matter jurisdiction is a threshold question of law, *Madsen v. United States ex rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987), as federal courts may only adjudicate cases the Constitution and Congress have granted them authority to hear. *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Consumers Gas & Oil, Inc. v. Farmland Indus.*

*Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992). Ultimately, "the party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kan. Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

"Motions to dismiss pursuant to Rule 12(b)(1) may take two forms." *Amoco Prod. Co. v. Aspen Grp.*, 8 F. Supp. 2d 1249, 1251 (D. Colo. 1998). First, a party may attack the facial sufficiency of the complaint, in which case the court must accept the allegations of the complaint as true. *Id.* Alternatively, where a party is attacking the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The court can consider such extraneous materials under Rule 12(b)(1) without converting a motion to dismiss into a motion for summary judgment. *Cf. King v. United States*, 53 F. Supp. 2d 1056, 1064 (D. Colo. 1999), *rev'd in part on other grounds*, 301 F.3d 1270 (10th Cir. 2002); *Zerr v. Johnson*, 894 F. Supp. 372, 375 (D. Colo. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal for "failure to state a claim upon which relief can be granted." The court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 2010 WL 437335, at *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.* The court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways a

plaintiff has not asserted. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and internal quotations omitted).

### III. ANALYSIS

A.      *Plaintiff Hoppe's First Claim for Breach of Purchase Agreement*

Moving to dismiss Plaintiff's first claim, Defendants argue Plaintiff Hoppe is not entitled to bring this claim pursuant to Rule 12(b)(6), as he was neither a party to the Purchase Agreement dated November 30, 2008 nor an assignee. Motion to Dismiss at 3-4. Defendants argue the unformed and therefore legally non-existent Limon Broadcasting is the only real party in interest that may sue on this claim. *Id.* at 5. Plaintiff Hoppe contends he is a real party in interest who can sue based on the contract principle of mutuality. Plaintiffs' Response at 3.

Rule 17(a) mandates "[a]n action must be prosecuted in the name of the real party in interest." "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." *Fed. Deposit Ins. Corp. v. Gelderman Inc.*, 975 F.2d 695, 698 (10th Cir. 1992). Because the court has jurisdiction over this case based on diversity of the parties, it applies the laws of the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir.1995); *Burr v. Moyer*, 2012 WL 364072, at *3 (D. Colo. Feb. 2, 2012).

Plaintiff Hoppe is not pursuing his claim as an assignee, but as a promoter under the principle of mutuality. Plaintiffs' Response at 3. Mutuality requires all contracts "be founded on a consideration of mutual promises or contributions of some character," which "impose upon each of the parties a legal

5

binding obligation which each can enforce against the other." *Rhodes v. Haberstich*, 326 P.2d 657, 660 (Colo. 1958); *Trayes v. Johns*, 52 P. 1113, 1114 (Colo. App. 1898).

Colorado law defines a promoter as "one who, alone or with others, undertakes to form a corporation and to procure for it the rights, instrumentalities, and capital to enable it to conduct business." *Coopers & Lybrand v. Fox*, 758 P.2d 683, 685 (Colo. App. 1988). Under the principle of mutuality, a promoter who signs a contract on behalf of a company not yet in existence becomes personally liable on the contract. Colo. Rev. Stat. § 7-8-105 (2012); *Sago v. Ashford*, 358 P.2d 599, 600 (Colo. 1961); *Bonfils v. Hayes*, 201 P. 677, 679 (Colo. 1921).

While Colorado law allows a promoter to be sued, it is silent as to whether mutuality extends to allow a promoter to assert claims on behalf of a non-existent company. Plaintiff Hoppe argues there is persuasive authority from other jurisdictions which support this extension. *See* Plaintiffs' Response at 5-6, citing *T Street Development L.L.C. v. Dereje*, 2005 U.S. Dist. LEXIS 38713, at *14-15 (D.D.C. December 19, 2005) (holding that a promoter liable under a contract must also have the right and standing to enforce that same contract under the principle of mutuality); *Fish v. Tandy Corp.*, 948 S.W. 2d 886, 890 (Tex. App. Fort Worth 1997) ("Because any enforceable agreement is mutual and binding on both parties, logic indicates a promoter who is liable under an agreement may also make a claim under such a contract."); *White v. Dvorak*, 896 P.2d 85, 80-89 (Wash. Ct. App. 1995) ("Absent unfair prejudice… from the use of a corporate name in the contract, [the individual purporting to act for a corporation] is a party to the contract and has an individual cause of action for its breach."). The court's own research has uncovered additional judicial precedents. *See In re Berris*, 2009 WL 1139085, at *2-4 (Bankr. S.D. Fla. Apr. 27, 2009) (holding mutuality should extend to allow the Debtor who executed the purchase contract at issue to sue on behalf of the non-existent entity); *Gardner v. Madsen*, 949 P.2d 785, 789 (Utah Ct. App. 1997) ("The individual who signs a contract in the name of a nonexistent

6

corporation can be a party to the contract."). The court finds the reasoning set forth in these cases persuasive. More importantly, Defendants have not offered any significant countervailing authority.

Defendants instead argue that extending mutuality to an individual purporting to act on behalf of a non-existent entity would reward fraudulent conduct. Motion to Dismiss at 6. However, Defendants' argument asks this court to move beyond the limited holdings of the cases cited in their Reply. Defendants' Reply at 3. For example, *Sago*, 358 P.2d at 600, discusses how fraud would be unfairly rewarded if a promoter was not held personally liable for the non-existent corporation's acts. *Id.* Similarly, the court in *Coors v. Security Life of Denver Insurance Co.*, 112 P.3d 59 (Colo. 2005), held that "a party to a contract cannot claim its benefit where he is the first to violate its terms." *Id.* at 64 (citing *Scientific Packages, Inc. v. Gwinn*, 301 P.2d 719, 722 (Colo. 1956) (holding material breach deprives party of right to demand performance by other)). Neither decision is applicable to the instant case since Defendants are not claiming Plaintiff Hoppe materially breached the terms of the Purchase Agreement.

On balance, Defendants' argument turns the requirement of mutuality on its head. Defendants would apply the mutuality principle to impose personal liability on a promoter who breaches on behalf of a non-existent entity, yet invoke that same principle of fairness to insulate themselves from their own alleged liability. *See Vernon v. Qwest Commc'ns Int'l, Inc.*, 2012 WL 768125, at *15 (D. Colo. Mar. 8, 2012) ("At the heart of the mutuality requirement is the notion of fundamental fairness."). This court is unwilling to so narrowly apply the principle of mutuality.[1] Thus, the court concludes Plaintiff Hoppe has sufficiently stated a claim as he is a real party in interest.

---

[1] Defendants further argue the principle of mutuality should not apply because Plaintiff Hoppe is incorrectly characterized as a sole promoter whereas Limon Broadcasting was reported to be a LLC with two members. However, Colorado law holds a non-existent company may have multiple promoters who may be personally liable under the principle of mutuality. *Coopers*, 758 P.2d at 685.

7

B.   *Plaintiff Hoppe's Second Claim for Breach of Consulting Agreement*

Defendants have moved to dismiss Plaintiff Hoppe's second claim arguing that the court lacks subject matter jurisdiction. Motion to Dismiss at 9. Defendants contend this claim is not ripe for adjudication as Defendants have acted in a commercially reasonable manner and are making ongoing efforts to upgrade the facility. *Id.* They also argue Plaintiff Hoppe did not comply with the Consulting Agreement, which requires any party alleging breach of contract to provide the alleged breaching party with 15 days notice of default and right to cure. *Id.* at 10.

Under Colorado law, "[a]n anticipatory repudiation of contract may occur upon a party's definite and unequivocal manifestation of its intention that it will not perform as required by the contract." *Highlands Ranch Univ. Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1023 (Colo. App. 2005). Plaintiff Hoppe argues Defendants clearly signaled their intent not to complete the upgrade when Defendants took no action to construct the facilities on frequency 93.7 MHz as authorized by the FCC upgrade construction permit, voluntarily cancelled the upgrade construction permit 16.5 months after receiving the permit, and filed an application to downgrade its existing facilities from a power level of 1kW to .1kW, with a reduced antenna center of radiation height, which was granted on November 3, 2011. Amended Complaint at 10, 13-14. Hoppe claims these acts resulted in less signal coverage for KIIQ rather than increased signal coverage, in violation of the Consulting Agreement, which called for upgrading the station's facilities. Plaintiffs' Response at 10. Hoppe further asserts that since another station obtained a FCC construction permit on November 11, 2011 to operate on frequency 93.7 MHz, Defendants are now barred from upgrading KIIQ or a substitute facility. *See id.* (citing to FCC Regulations, 47 C.F.R. § 73.3573 (2012)); Amended Complaint at 12.

Defendants claim they initially demonstrated ongoing intent to comply with their obligations under the Consulting Agreement by amending the FCC construction upgrade application with additional engineering information, therefore allowing them to receive the upgrade construction permit. *See*

8

Motion to Dismiss at 11 (citing to paragraphs 24 through 28 of Plaintiffs' Amended Complaint). Defendants point to their consent to the substitution of KIIQ's operating frequency from 102.3 MHz to 93.7 MHz as proposed in the upgrade application, their cancellation of the FCC upgrade construction permit, and their plans to modify the KIIQ facility by changing the station's operating power, tower site, and antenna center of radiation, as evidence of their additional ongoing efforts to upgrade the facility. *See id.*

Defendants also argue Hoppe failed to provide notice of default and right to cure prior to seeking legal action, as required under the Consulting Agreement. *Id.* at 10. However, both parties agree there was no way to cure the alleged default as Defendants would have been unable to obtain another upgrade construction permit to begin any sort of upgrading within the 15-day cure period specified in the Consulting Agreement. *See* Amended Complaint at 10; Defendants' Reply at 5.

In Colorado, notice of default and right to cure is not required if it would be futile. *Highlands Ranch*, 129 P.3d at 1024 ("[T]enant clearly communicated its intent not to perform under the lease, and thus landlord's compliance with the lease provisions requiring notice and opportunity to cure would have been futile acts."). A party is permitted a "reasonable time" to cure only "[w]here no time of performance is specified in a contract." *Colo. Woman's Coll. v. Bradford Robinson Printing Co.*, 157 P.2d 612, 614 (Colo. 1945). In this instance, the Consulting Agreement explicitly states the breaching party would have "fifteen (15) days' opportunity to cure." Consulting Agreement, dated November 29, 2012, attached as Ex. F to Motion to Dismiss at 3. Therefore, prior notice would have been futile since it is uncontested that Defendants would have been unable to perform their obligations under the Consulting Agreement within the 15-day cure period.[2]

Whether Defendants clearly manifested intent not to perform raises factual matters better addressed through a motion for summary judgment or at trial. Although the court may address subject

---

[2] Thus, whether Plaintiff Hoppe's letter, sent to Defendants after litigation began on January 31, 2012, provides sufficient notice need not be addressed.

matter jurisdiction at any time, Fed. R. Civ. P. Rule 12(h)(3), this court concludes dismissal of this claim is not appropriate at this time.

C.     *Plaintiff CCI's Third and Fourth Claims for Breach of Lease and Unjust Enrichment*

Defendants next move to dismiss Plaintiff CCI's third and fourth claims pursuant to Rule 12(b)(6) for failure to state claims for relief.  Defendants argue Plaintiff CCI has no standing to bring this claim as CCI had been automatically dissolved by the State of Michigan under Mich. Comp. Laws § 450.1831 for failure to file annual reports, and therefore lacked a corporate existence at the time the Studio and Transmitter Lease was entered. Motion to Dismiss at 7-8.  Defendants thus contend the Studio and Transmitter Lease was not a valid and binding contract. *See id.* at 8.  In response, Plaintiff CCI argues that Michigan law treats this dissolution effectively as a suspension rather than a termination of corporate existence, and therefore CCI could enter into binding contracts in its suspended state. Plaintiffs' Response at 14-15.

The court first looks to Colorado law to determine the validity of the Studio and Transmitter Lease. *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006).  In Colorado, a dissolved corporation cannot conduct business unless it is to wind up or liquidate. Colo. Rev. Stat. § 7-114-105 (2012).  However, consent by the state of incorporation is required before surrender of a corporate charter will be effectual as a true dissolution. *First Nat. Bank of Greely v. United States*, 9 F. Supp. 28, 29 (D. Colo. 1934).  Without such consent, the corporation may continue to exist in a suspended state. *See id.*; *Dominion Oil Co. v. Lamb*, 201 P.2d 372, 375 (Colo. 1948).   Under Colorado law, a corporation's powers during suspension are regulated by the state that imposed the suspension. *See Dominion Oil*, 201 P.2d at 376-77 ("Contracts entered into without the payment of license taxes are void only because *the laws of the State imposing the taxes make them void*, either expressly or by implication.") (emphasis added).  Thus, the court will look to Michigan law to determine whether CCI is

a dissolved corporation, rather than a suspended corporation, that cannot conduct business under Colo. Rev. Stat. § 7-114-105.

Plaintiff CCI claims to have been suspended under Mich. Comp. Laws § 450.1922 and subsequently reinstated under Mich. Comp. Laws § 450.1925. In opposition, Defendants argue CCI was automatically dissolved by the State of Michigan under Mich. Comp. Laws § 450.1831, which governs permanent dissolution. As Plaintiff CCI has, without contradiction, offered evidence of reinstatement through a printout from the Michigan Department of Licensing & Regulatory Affairs showing CCI's reinstatement as of February 22, 2012, Plaintiffs' Response, Ex. 3 at 1,[3] the court finds Mich. Comp. Laws § 450.1922 and § 450.1925 govern CCI's state of incorporation.

Mich. Comp. Laws § 450.1925 states that upon reinstatement, "the rights of the corporation shall be the same as though a dissolution or revocation had not taken place, and all contracts entered into and other rights acquired during the interval shall be valid and enforceable." Mich. Comp. Laws § 450.1925 (2012). Michigan law also is clear that "[t]he effect of the reinstatement statute is to make the voidance of the charter more in the nature of a suspension of corporate privileges than an absolute termination of corporate existence." *Bergy Bros., Inc. v. Zeeland Feeder Pig, Inc.*, 327 N.W.2d 305, 308 (Mich. 1982). Therefore, under Michigan law, CCI's automatic dissolution acted as a suspension rather than a true dissolution.

Defendants argue "a dissolved corporation cannot acquire claims or rights as a result of transacting business in the state of Colorado during its period of suspension." *Graham, Inc. v. Mountain States Tel. & Tel. Co.*, 680 P.2d 1334, 1335 (Colo. App. 1984), *superseded by statute*, the Colorado Business Corporation Act, Colo. Rev. Stat. § 7-101-101. Upon further examination, Defendant's reliance on *Graham* is misplaced. *See Awanderlust Travel, Inc. v. Kochevar*, 21 P.3d 876 (Colo. App. 2001) (recognizing *Graham* is no longer determinative on this issue as it interprets a now-repealed

---

[3] The court may take judicial notice of documents in the public record. *State Farm Mutual Automobile Insurance Co. v. Boellstorff*, 540 F.3d 1223, 1226 n.7 (10th Cir. 2008).

statute). This case is no longer good law and involved corporations suspended under Colorado law. *Graham*, 680 P.2d at 1335.

As Michigan provides reinstated corporations with the power to enter into contracts during suspension and since Colorado has not barred such suspended corporations from contracting, the Studio and Transmitter Lease executed by CCI and Defendants during CCI's suspension is valid and binding. Thus, Plaintiff CCI may bring claims for breach of the lease agreement and unjust enrichment.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants Percheron Associates, LLC and Ms. Canter's Motion to Dismiss Amended Complaint (doc. #14), filed February 7, 2012 is DENIED.

DATED this 1st day of August, 2012.

BY THE COURT:

  s/ Craig B. Shaffer
United States Magistrate Judge